UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    MAR 0 6 2009    ★

LONG ISLAND OFFICE

E.M. a child with a disability,
Individually and by mother, Colleen Merz

*Pro se Plaintiffs,*

CV -09    954
FEUERSTEIN,
TOMLINSON, M

Vs.

Complaint
Case No.

MATTITUCK- CUTCHOGUE UNION FREE SCHOOL DISTRICT,
JAMES MCKENNA, PATRICIA DESIDERIO,
LINDA TILLINGHAST, PAUL KELLY, INGERMAN AND SMITH L.L.P.
*Defendants,*

## I. INTRODUCTION

1.1  This is a complaint for injunctive relief, damages, and reimbursement of costs
under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA");
the Rehabilitation Act of 1973, 29 U.S.C. § 792 *et seq.* ("Section 504"); the Civil Rights
Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983"), and 1988 ("Section 1988); and Title II
of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA").  Plaintiffs
also raise claims under the New York Education Law §§ 4401 *et seq.*; and the New York
State Constitution Article XI, §1.

## II. JURISDICTION AND VENUE

2.1  Jurisdiction is predicated upon 28 U.S.C. § 1331, which provides the district
courts with original jurisdiction over all civil actions arising under the laws of

1

the United States, upon the civil enforcement provision of IDEA 2004, 20 U.S.C.

§ 1415(I)(2), upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), which authorize the

District courts to enforce rights, privileges and immunities secured by the Constitution of

the United States and by Acts of Congress, and upon 28 U.S.C. § 1367, which provides

supplemental jurisdiction over all other claims that are so related to claims in the action

within the original jurisdiction that they form part of the same case or controversy.  As

per, NYS Education law, this appeal is timely:

> Any final determination or order of a state review officer
> rendered pursuant to subdivision two of this section may only be
> reviewed in a proceeding brought in the supreme court pursuant to
> article four of the civil practice law and rules, and paragraph b of
> this subdivision, or in United States district court. Any such
> proceeding shall be commenced within four months after the determination
> to be reviewed becomes final and binding on the parties.

2.2  Venue is properly laid within the Eastern District of New York pursuant to 28

U.S.C. § 1391(b) in that the Plaintiffs live in the Eastern District of New York, the

Defendants are located in the Eastern District of New York, and a substantial part of the

acts or omissions giving rise to the claim occurred in the Eastern District of New York.

2.3  Although prior court decisions give great deference to the original decision of

the impartial hearing officer, it must be noted that no such deference is due in this case. A

complaint by the parent to Commissioner of Education Richard Mills provides a full and

detailed account of all the procedural errors committed by the IHO that in their entirety in

and of themselves clearly resulted in a denial of FAPE to EM. A few of the more

egregious violations committed by the IHO are detailed below but a full reading of the

complaint, which is part of the official record, is encouraged.

2.4  The IHO in this matter was appointed out of NYS's mandated  rotational order.

Indeed, the federal court ruling which required the imposition of a rotational system in

NYS to ensure impartially was only imposed because ***this same IHO*** refused to recuse

himself from a hearing involving a personal acquaintance. Quoting from the decision

Sobel v. Heldman(962 F.2d 148 60 USLW 2694, 74 Ed. Law Rep. 1042):

> *The Heldmans subsequently found a letter in T.H.'s file from Minisink's attorney--the very attorney they would be arguing against in the upcoming hearing--to the Board of Education recommending that they select Kandilakis as the hearing officer. Furthermore, in the letter, the attorney revealed that "[i]t was through Dr. Eckelt that I was able to locate Mr. Kandilakis." On the basis of this information, on March 31, 1989, the Heldmans filed a motion of recusal and withdrew their hearing request pending a decision on the motion. Officer Kandilakis never responded to the motion and, on April 10, 1989, he conducted the hearing without the Heldmans being present.*

2.5  In this instance,  IHO Kandilakis responded to the knowledge he was appointed

out of the rotational order in this hearing by refusing to recuse himself and stated  he

would await a determination by NYSED whether he was appointed out of rotation before

beginning the hearing. Just as in the infamous Sobel v Heldman case, IHO Kandilakis

preceded with the hearing anyway.

2.6  The IHO cancelled the first scheduled hearing date because the parent had been

denied by the district full and unfettered access to her child's educational records prior to

a hearing as is her right under law.  In addition, the parent had received no disclosure

from the district at least 5 days prior to the start of the hearing. Instead a conference call

was held on that day.

2.7  As the district had only permitted the parent 15 minutes to view her child's

educational records, the parent had asked the IHO prior to the conference call to order the

district to provide said access. During the conference call, the IHO refused  to issue such

an order but asked that the district counsel contact the district about scheduling access for

the parent to view her child's records.  ***The only access provided the parent to her***

3

*child's records  occurred* the day before the hearing  and consisted of *30 minutes in the gymnasium  during a basketball game widely attended by the public* under the watch of the school security guard.  The IHO proceeded with the hearing anyway, saying he would take it under advisement.  To this day, the parent continues to be denied full access to her child's educational records by the district.

2.8   As above, such behavior, in addition the numerous errors of law and fact in IHO Kandalakis' decision of 7/31/08, render his entire decision suspect and necessitates  a complete and independent judicial review.

2.9   The Office of State Review is an office separate and apart from NYSED and decisions made by that office are not subject to any kind of oversight, quality control, or review by NYSED to ensure the NYS law is being properly applied. According to the Deputy Commissioner of Education of NYS, Dr. Rebecca Cort, the only means of review and oversight applied to the SRO occurs when a federal appeal is filed and the federal court independently reviews the entire decision of the SRO to determine if the law has been applied properly.

2.10  Federal courts typically conduct independent judicial reviews of IDEA actions, which are in effect administrative appeals based on evidence in the record before them. See BOARD OF EDUCATION v. ROWLEY 458 U.S. 176; 102 S. Ct. 3034; 73 L. Ed. 2d 690 (1982)

2.11 Thus, the failure of this court to review the decision of the SRO in its entirety is a constructive denial of EM'S right to a free and appropriate public education.  As noted above, NYSED does not have any quality assurance or review in the State Review Office due to its independence in the NYSED.  In NYS, the Office of State Review is omnipotent.  If the SRO errs in application of law and facts, as he has in this matter, the

4

only avenue for correcting those errors is via this complaint.

## III. PARTIES

3.1   Plaintiff E.M.. is a child who was born on 12/28/1999, who, at all times relevant to this complaint, was a student enrolled in the Defendant's MATTITUCK CUTCHOGUE UNION FREE SCHOOL DISTRICT, and who, at all times relevant to this Complaint was a child with a disability within the relevant statutes, and otherwise qualified for the benefits he has been denied.

3.2  Plaintiff COLLEEN MERZ (CM.) is the mother and natural guardian of EM, who at all times relevant to this action has resided with EM, and who, pursuant to the Supreme Court's decision in Winkelman v. Parma, 127 S. Ct. 1964 (2007), has independent, enforceable rights under the IDEA which are not limited to procedural and reimbursement-related matters but encompass the entitlement to a free appropriate public education for her child.

3.3  Defendant MATTITUCK CUTCHOGUE UNION FREE SCHOOL DISTRICT (MUFSD) is, and  at all times relevant to this Complaint was, a "local educational agency" within the  meaning of 20 U.S.C. § 1401, and a "public entity" within the meaning of 42 U.S.C. § 12131.

3.4  Defendant PATRICIA DESIDERIO is, and at all times relevant to this complaint was the Director of Special Education and CSE Chairperson for Defendant MUFSD.

3.5 Defendant LINDA TILLINGHAST is, and at all times relevant to this complaint was a teacher of Special Education and CSE Chairperson for Defendant MUFSD

3.6.  Defendant JAMES MCKENNA is, and at all times relevant to this

complaint was the Superintendent of Defendant MUFSD.

3.7. Defendant INGERMAN SMITH, L.L.P. is, and at all times relevant to this complaint were the attorneys for MUFSD.

3.8. Defendant PAUL KELLY, State Review Officer,  is, and at all times relevant to this complaint was the New York State Review Officer.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.1. Defendants filed a Demand for a Due Process Hearing on 4/01/08 pursuant to 20 U.S.C. § 1415(f)(1).

4.2. Defendants stated, inter alia, that the parent was not in agreement with the educational evaluations conducted by MUFSD for EM.  Defendants filed the hearing complaint to defend its evaluations.

4.3. A  one day hearing was duly conducted before Impartial Hearing Officer (IHO) George Kandilakis  on 6/13/2008.

4.4. On 7/31/2008, IHO Kandilakis issued a 14 page decision denying  the parent reimbursement for the IEE without addressing the sole issue in the hearing complaint: whether or not the district's 9/2008 evaluation was appropriate.

4.5. On 8/6/2008 the parent sent a copy of the decision to NY State Commissioner of Education Richards Mills.  The parent stated that she wished to appeal but in order to do so, she must know the rational of the IHO decision.  In her letter to Commissioner Mills, the parent details how  IHO' s decision was incomprehensible.  The IHO denied the reimbursement for the IEE without providing any rational and then ordered several corrective actions on the part of the District for all the errors it made.  Indeed, the

decision never even discussed whether the defendants met their burden of proof that their evaluation was adequate, which was the sole issue in the defendants complaint.

4.6  On 8/20/2008, NYS Assemblyman Marc Alessi also contacted the Commissioner of Education on  behalf of his constituent EM to express his concerns that unless the Commissioner provided a clear explanation of the IHO's decision, that EM's right to appeal was unduly compromised.

4.7  Commissioner Mills responded to the parent in writing . The response ignored the issues raised by the parent in her letter and stated only the parent had a right to appeal.

4.8  On 8/6/2008 the parent sent a copy of her letter to Commissioner Mills and a copy of the decision to SRO Paul Kelly.  The parent again stated she wished to preserve the right to appeal but the decision was incomprehensible.  The parent informed SRO Kelly she had asked for Commissioner Mill's assistance in this matter.  The parent also requested that SRO Kelly inform her of any other actions she should pursue to preserve the right to appeal.

4.9  SRO Kelly's office responded in writing to the parent on8/21/08 . The SRO also ignored the issues raised by the parent in her letter and also only restated  what the parent already knew: she had a  right to appeal.

4.10  On 9/8/2008  Plaintiffs filed a  Petition for Review to the New York State Education Department State Review Office(SRO) pursuant to 20 U.S.C. § 1415(g).

4.11  On November7, 2008 ,  the SRO denied the appeal requesting reimbursement for the IEE, Application of EM., a Child with a Disability, Appeal No. 08-101 . The SRO held that the parent  was not entitled to reimbursement for the IEE because she did not

disagree with the district's 9/2008 testing However, the SRO agreed with the Plaintiff that the IHO's decision did not address the district's burden of proof regarding the appropriateness of it's 9/2008 evaluation, which was the sole issue in the complaint.

4.12 The SRO's decision is in direct contradiction of the voluminous record before the SRO, including but not limited to the parent's request for the IEE because she disagreed with the 9/2008 testing , the district's request for a hearing which states the parent disagreed with the testing, the parent's sworn testimony she disagreed with the 9/2008 testing done by the district, director of special education for the districts sworn testimony that the district filed for the hearing to defend its evaluation, the decision of the IHO which states the parent disagreed with the testing, and the defendants post hearing brief which also states the parent objected to the 9/2008 testing because testing modifications were used.

The SRO's decision ignores the obvious fact that if the parent did not disagree with the 9/2008 evaluation, there would have been no due process hearing to begin with. The district was not obligated to go through the time and expense of a due process hearing to defend the 9/2008 evaluation if it was not objected to.

4.13. Plaintiffs have exhausted all applicable administrative remedies.

## V. FACTUAL ALLEGATIONS

5.1. The IDEA and its implementing regulations 34 CFR Part 300 and the New York Education Law §§ 4401 *et seq* and its implementing its Part 200 regulations entitle all students with disabilities the right to a free and appropriate public education.

5.2. According to IDEA ,20 UCS section 1401(3) and at 34 CFR sect 300.7(a)(1) and

(c)(10)  term child with a disability includes students who have autism.

5.3.  According to IDEA, 20 USC Sect 1400(d)(1), 1412(a)(1), (3) and (7) and 1414 (a-c) and regulations promulgated pursuant to it at 34 CFR sect 300.125, 300.300, 300.320 and regulations under 8 NYCRR §200, each state and school district receiving federal funds must evaluate and identify all students residing within their boundaries who are suspected of being a student with a disability and in need of special education, regardless of the severity of their disability and even though they are passing from grade to grade.

5.4.  The district has received and is receiving federal and state  funds under IDEA and the state act. These federal and state funds are received for the purpose of providing a free and appropriate public education to all students with disabilities

5.5.  EM's  difficulties include autism and central auditory processing disorder compounded by inattention and learning deficits. EM displays significant weakness in the area of auditory figure-ground listening, integration, phonemic awareness, organization, short-term memory, comprehension, and receptive and expressive language.  His disorders impact on his reading ability.

5.6.  At 5 years of age EM entered MUFSD's kindergarten as 12 month student classified as Learning Disabled . EM was placed in a general education setting and received Speech, Occupational Therapy(OT), Physical Therapy( PT), and resource room for math and reading. EM had one on one aide all day. Summer services  for 6 weeks included Speech and OT (2 hours per day/ four days week: time includes related service pull outs).

5.7  At 6 years of age EM entered MUFSD'S first grade general education setting as

a 12 month student  with a classification of Autism. He received Speech ,OT , and resource room for reading and math. EM had a one on one aide for classroom only. During the school year, services added to the IEP included an autism consultant  for indirect observation, vision consultant  for Vision Therapy services, and an Assistive Technology consultant for indirect consult with EM's teachers. Summer services  included Speech and OT (2 hours per day/ four days week, including related service pull outs).

5.8 During the summer of 2007, the parent obtained an independent neuropsychological evaluation of EM at her own expense.

5.9 At 7 years of age EM entered MUFSD's second grade as a 12 month student classified with Autism. He received Speech, OT, and  resource room for reading and math. EM's placement was collaborative classroom with no aide.

5.10 The parent requested the MUFSD evaluate EM in September of 2007 to determine whether or not EM had regressed despite receiving summer services. The Woodcock Johnson III  was  administered by Linda Tillinghast, Special  Education teacher for the MUFSD  on 9/17/2008.

5.11  In a letter dated 9/24/2008, the MUFSD asked the parent for consent to begin conducting EM's triennial evaluation.  As EM had just had a neuropsychological evaluation and  testing by the district was done the prior week, the parent declined to grant consent at that time. The parent later granted consent once a sufficient interval of time had passed from the summer/fall testing to not invalidate the results or throw the results into doubt due to a possible practice effect. Clearly the MUFSD agreed with the parent that further testing should be postponed as they did not initiate any of the

avenues available to them to conduct the testing without parental consent.

5.12 The results of the 09/17//07 testing by the district were reviewed at the 11/07 Committee on Special Education(CSE) meeting  The testing indicated that EM had regressed over the summer despite receiving extended  school year(ESY)  services.

5.13 The 09/17/07 testing done by the district was done with testing modifications, which  according to the test makers, invalidates the results.

5.14 On 2/29/20008 the parent, stating she disagreed with the 9/07 evaluation done by the MUFSD,  requested an IEE on from Patriciia Desiderio, Director of Special Education for the Mattituck Cutchogue UFSD .

5.15  On 3/3/08, an email was sent from Kathy Best, Special Education secretary to the parent saying Ms Desiderio would get back to her on this request.  This never happened.

5.16 On 3/6/08, an email from the parent was again sent to Ms Desiderio et al regarding the IEE request.

5.17 On  3/11/08, an email from the parent was again sent to Ms Desiderio et al regarding the IEE request.

.   5.18  On 3/21/08, an email from the parent was again sent to Ms Desiderio et al regarding the IEE request.

.   5.19 On 03/23/08, the parent filed a complaint with the NYSED regarding the district's intentional  and unnecessary delay in approving or denying the IEE request. A previous complaint  on this very issue against the district regarding an IEE requested by this same parent was founded.  The district was forced to withdrew a hearing request seeking again to deny an   IEE as the parent is entitled to an IEE at district expense as a

matter of law when a determination of unnecessary delay has been made. The fact that the MUFSD was again unnecessarily delaying responding to the same parent's IEE request is no coincidence. The district was willfully continuing the same behavior that NYSED had previously found lead to a denial of FAPE.

5.20 Upon receiving the parent's complaint, Ms Eileen Taylor, LI VESID regional associate called the district to remind them that as per NYSED Corrective Action Plan(CAP) issued against the district, they must avoid unnecessarily delaying responding to an IEE request.

5.21 Ms Best emailed the parent on 3/26/08 stating that Ms Desidreio will be responding to the parents IEE request.

5.22 Ms Desiderio informs the parent on 3/26/08 via email the district will be taking the parent to hearing.

5.23 On 04/01/08, the parent received a call from IHO Kandilakis informing her of his appointment.

5.24 After receiving this call, the parent went to the MUFSD's administrative office to requested a copy of the district's documentation for the appointment of IHO Kandilakis. The district clerk informed her she was not going to provide her that information at that time, so. The parent then asked to speak to the Superintendent. The district clerk told her that the superintendent was busy. The Parent indicated that she would wait until the superintendent was free. At that point, the superintendent suddenly became available and the parent was shown into his office.

5.25 The full details of the discussion that took place between the parent and the superintendent are outlined in the record. This account has not disputed by any

12

of the parties.

5.26 During their conversation, Superintendent James McKenna expressed concern with the parent wishing to see the documentation on how the IHO was appointed. The Superintendent also explained to parent the reason for the unnecessary delay in responding to the IEE request and the sole reason the district was filing for a hearing to deny her IEE request was the result of a meeting between himself, the Director of Special  Education, Patricia Desiderio, and the district's counsel, Christopher Venator of the law firm of Ingerman Smith LLP.   According to the Superintendent, the attendees at said  meeting decided  that the parent must be "made to pay" for her advocacy for her children and the best way to do that was to delay and deny every request the parent made.  Again, it must be noted that neither the Superintendent, Ms.  Desiderio, or Mr. Venator deny the parent's account, despite many opportunities to do so both in this hearing and in the local paper when the account of this conversation were made public.

5.27 Defendant Desiderio testified she denied the parents IEE request because she felt further testing wasn't necessary. However, after receiving the results of the parents IEE conducted in March, and after filing for a hearing to defend its September evaluation, the district conducted further  testing in  April, 2008. Unlike its earlier testing, this time the person administering the  testing claims not to have granted EM any testing modifications.

5.28  After receiving the documentation from the district regarding the appointment of IHO Kandilakis, the parent filed a complaint with NYSED against the district for failing to follow NYS law on appropriately appointing IHOs via rotation.

5.29   As is more fully documented in record, the parent asked the IHO

recuse himself on several occasions due to his being appointed out of rotation, clear bias against the parent, refusal to order the district to provide the parent access to her child's educational records, and remarkable lack of knowledge about the Commissioner of Education's regulations which h he is sworn to enforce. The IHO refused all such requests.

5.30  The hearing was held on 6/13/2008.

5.31  A decision was rendered on 7/31/08 which denied the parent's request for reimbursement for the IEE but provided no rational for that decision.  The decision states the parent disagreed with the results of the September, 2007 testing. The decision also ordered corrective action on the part of the district regarding its policies on IEEs and providing training to staff on said policy.

## VI.  CAUSES OF ACTION UNDER 42 U.S.C. § 1983

6.1.  The Civil Rights Act of 1871 creates a federal cause of action that enables individuals to seek relief in a federal forum against those persons who, under color of state law, have deprived them of federally secured rights. See 42 U.S.C. § 1983.

6.2.  The Act applies to municipalities. See Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978).

6.3.  School officials may incur liability under § 1983 if they, "with deliberate indifference to the consequences, establish, and maintain a policy, practice or custom which directly causes a plaintiff's constitutional harm." Stoneking II, 882 F.2d at 725.The violations outlined  below of USC. § 1983  by the defendants resulted in the denial to EM of the rights  available to him under IDEA and  Sect 504 :primarily  the right to a

free and appropriate public education .and  as his parent, I am entitled to raise

pro- se issues of denial of FAPE.

### First Cause of Action Under 42 USC. § 1983

6.4.  Defendant's  Desiderio and Mckenna  were fully aware of  Federal and NYS

law prohibiting unnecessarily delay in granting a request for an IEE or filing for a hearing

to defend the district's evaluation.  NYSED had just deemed a complaint filed against the

district  for unnecessary delay by the parent as founded and ordered corrective action on

the part of the district to ensure this situation did not happen again.

6.5 Defendant's  Desiderio and Mckenna were sent numerous emails by the parent

regarding the status of her IEE request.  Those emails were ignored.  It was not until

NYSED called the district regarding yet another complaint against them for the identical

violation that Defendants were forced to act.

6.6 The delay, as before, was not only unnecessarily but a deliberate. Thus,

defendants Desiderio and McKenna denied EM the rights available to him under IDEA

and  Sect 504 : primarily the right to a free and appropriate public education.


### Second  Cause of Action Under 42 USC. § 1983


6.7  The first few pages of IHO Kandilakis' decision  are spent in a withering rebuke

of the parent not only for  having dared to question his competence and impartiality but

having done so on the official record of the proceeding.  While he denies in his decision

that he is biased against the parent, his decision reeks of distain toward the parent and the

audacity she showed in asking him to recuse himself when he was appointed out of

rotation, for failing to recuse himself when he failed to follow the timelines laid out in the Commissioner's Regulations for conducting the hearing, failing to recuse himself for refusing to order the district to provide the parent with access to her child's educational records before a hearing as is her right under law etc. Indeed, Mr Kandilakis gets so carried away in his rebuke that he states he doesn't have the jurisdiction to rule on the harassment and retaliation issues raised by the parent but then goes on to deny those claims anyway. **Finally, IHO Kandilakis denies the parent reimbursement for an IEE without ever addressing the sole issue in the complaint filed by the district: whether the district had met its burden of proof to show that the 9/07 testing to which the parent objected to was appropriate.**

6.8. IHO Kandilakis used the authority granted him as an administrative law judge to deny EM's rights available to her under IDEA and Sect. 504: primarily the right to a free and appropriate public education.

### Third Cause of Action Under 42 USC. § 1983

6.9 SRO Kelly's decision is in direct contradiction of the very state policies he is charged to uphold, primarily denying the parent's appeal on an issue not raised in the hearing complaint and not disputed by the parties during the hearing.

6.10 It must be noted that recent federal court decision, H.C. v. Colton-Pierrepont cites Mr. Kelly's tendency to overstep the limits of his authority, as he has done in this case:

*"[t]he SRO also exceeded the scope of his authority because "[t]he decision of the State review Officer shall be based solely upon the record before the State Review Officer.....the SRO for "depriv[ing] both parties of due process because he failed to inform them that he intended to*

*rule on the rights of home-schooled students to receive special education services – an issue that neither party raised nor briefed*

6.11 It must be noted that recent federal court decision, M.V. -v.-SHENENDEHOWA CENTRAL SCHOOL DISTRICT, notes that Mr. Kelly gets the central facts of the case wrong, as he has done in this case:

> *Furthermore, in reaching his decision, the SRO incorrectly characterized facts that were apparently central to his analysis:*

The court goes on to say it questions the creditability determinations and reasoning of the SRO.

6.12. SRO Kelly used his authority as state review officer to deny EM.'s rights available to him under IDEA and Sect 504: primarily the right to a free and appropriate public education.

## VII.  CAUSES OF ACTION UNDER 42 U.S.C. § 1985

7.1 The Civil Rights Act of 1871 creates a federal cause of action that enables individuals to seek relief in a federal forum against those persons who "conspire or go in disguise on the highway or the premises of another, for the purpose of depriving … any person or class of persons of the equal protection of the law." See 42 U.S.C. § 1985.

7.2 The Act applies to municipalities. See Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978).

7.3 To state a valid conspiracy claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 533 (10th Cir. 1998)..

7.4 The United States Court of Appeal Tenth circuit held in Dunn that to show

the existence of an agreement, "it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences." 920 F.2d at 702

7.5 The "single plan" in this case was to deny EM a FAPE by using any means available to the administrators, staff, and legal counsel of the district including but not limited to: perjury, harassment, retaliation ,and intimidation.

7.6 The plan began with the filing of the first due process hearing on my eldest son's behalf when the district refused to honor agreement reached at CSE to evaluate him and continues through the current hearing filed in October 2008 for EM because the district failed/ refused to correct goals and other errors on EM's IEP. The violations outlined below by the defendants resulted in a denial of FAPE to EM and his family and as his parent, I am entitled to raise pro- se issues of denial of FAPE.

### First Cause of Action Under 42 USC § 1985: Perjury

7.7 According to the NYS Penal Code, a person is guilty of perjury in the first degree when he swears falsely and when his false statement (a) consists of testimony, and (b) is material to the action, proceeding or matter in which it is made. In the example below, Defendant Tillinghast meets the criteria outlined in the law for perjury- her lies directly resulted in the denial of FAPE to EM.

7.8 Although such actions meet the criteria for section 210.15 of the NY Penal code, the result of these actions was to deny EM a free and appropriate public education. It is that denial of FAPE that the parent is contesting pro-se.

7.9 The record shows that Defendant Tillinghast testified her title is that of Educational Evaluator for the district. There is no such position in the

district.

7.10   The record shows that Defendant Tillinghast testified she was very experienced in administering and interpreting the WJ III. The Superintendent told the parent Ms. Tillinghast received no training by the district on how to administer and interpret the WJIII. Such a lack of training would explain why Ms. Tillinghast improperly administered the WJIII to EM in September of 2007, thus invalidating the results.

7.11  The record shows that Defendant Tillighast testified the testing administered in April of 2008 made the IEE of March 2008 unnecessary. In fact, it was testing done by Ms Tillinghast subsequent to the IEE that was unnecessary, duplicative, and suspect as to its validity.

7.12  The IHO ignored the letter from Mr. McKenna about Ms. Tillinghast not being an educational evaluator for the district or not having received any training on how to administer and interpret the WJIII. The IHO ignored a parent exhibit, a book written by the test makers on who to administer and interpret the WJIII, which shows Ms Tillinghast did not follow the protocols of the test nor did she have the required expertise to administer and interpret the WJIII .

7.13 Instead, the IHO relied solely on Ms Tillinghast's testimony alone and concluded, because of the above perjury, she was a credible witness and knowledgeable about administering and interpreting the WJIII. Thus, theses lies by Ms Tillinghast were material to the denial of FAPE to EM. It is the denial of FAPE that the parent challenges and that provides her right to pursue this matter pro-se.

### Second Cause of Action Under 42 USC § 1985: Criminal Liability For Conduct of Another by Ingerman Smith

7.14 Section 20.00 of the NYS Penal Code states: When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

7.15 Defendant Ingerman Smith, represented by Christopher Venator, Esq, , attended a meeting with Defendant Desiderio and Defendant McKenna.  The subject of the meeting, according to Defendant McKenna, was the parent and how to best thwart her efforts to advocate for her children.

7.16 Mr. Venator, a long time education lawyer, is aware that it is a violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act to intimidate,  threaten, coerce, or discriminate against an individual who has engaged in a *protected activity*. Protected activities include filing a complaint, testifying, assisting in, or participating in an investigation or hearing under Section 504 or the ADA.

7.17 Mr Venator, a long time education lawyer, is aware that any child classified under the  IDEA  also falls under all the protections available under Sect 504 of the Rehabilitation Act.

7.18 Mr. Venator, knowing that the purpose of the meeting was to develop a strategy to harass, intimate, and retaliate against the parent for advocating  for her special needs children, a protected activity under Sect 504 and the ADA,' did not seek to absolve himself of this unlawful  activity but according to Defendant McKenna, participated in the above meeting where it  was decided that the parent must be "made to pay"  for her

advocacy by unnecessarily delaying and denying her requests for services and evaluations regarding her special needs children

7.19 It must be noted that at the hearing, defendants counsel did not dispute details of the meeting outlined in the parent's letter of confirmation to Defendant McKenna about their conversation. Indeed, he did not even object to the introduction of the letter as an exhibit.

7.20 Defendant Ingerman Smith, by action of its counsel to the district, aided Defendant Desiderio's and Defendant McKenna's efforts to unnecessarily delay and then deny EM. a free and appropriate public education as per IDEA. It is the denial of FAPE that the parent challenges and that provides her right to pursue this matter pro-se.


### Third Cause of Action Under 42 USC § 1985:
### Criminal Liability For Conduct of Another by Defendant Desiderio

7.21 Section 20.00 of the NYS Penal Code states: When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

7.22 Defendant Desiderio attended a meeting with Defendant's Counsel and Defendant McKenna. The subject of the meeting, according to Defendant McKenna, was the parent and how to best thwart her efforts to advocate for her children.

7.23 Defendant Desiderio, by virtue of her position as director of Special Education for the MUFSD, is aware that it is a violation of Section 504 of the Rehabilitation act and

the Americans with Disabilities Act to intimidate, threaten, coerce, or discriminate against an individual who has engaged in a *protected activity.* Protected activities include filing a complaint, testifying, assisting in, or participating in an investigation or hearing under Section 504 or the ADA.

7.24  Defendant Desiderio is aware that any child classified under the IDEA is also subject to all the protections available under Sect 504 of the rehabilitation Act :

7.25  Defendant Desiderio, knowing that the purpose of the meeting was to develop a strategy to harass, intimate, and retaliate against the parent for advocating for her special needs children, a protected activity under Sect 504 and the ADA' did not seek to absolve herself of this unlawful activity but according to Defendant McKenna, participated in the above meeting where it was decided that the parent must be "made to pay" for her advocacy by unnecessarily delaying and denying her requests for services and evaluations regarding her special needs children.

7.26  Defendant Desiderio in her testimony at this hearing did not deny or dispute the validity of parents letter of confirmation to Defendant McKenna or the parent's testimony on this issue.  In addition, Defendant Desiderio did not dispute the account of this meeting  published in the town's paper, The Suffolk Times.  It should be noted that the administration has responded to other published comments in the Suffolk Times on special education issues when they disagreed with or disputed the reporting. The articles in question were offered as parent exhibits but denied admission by the IHO.

7.27  Defendant Desiderio aided defendant's counsel and Defendant McKenna's efforts to deny EM. a free and appropriate public education.

<u>Fouth  Cause of Action Under 42 USC  § 1985:</u>
<u>Criminal Liability For Conduct of Another by Defendant McKenna</u>

22

7.28 Section 20.00 of the NYS Penal Code states: When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

7.29 Defendant McKenna  attended a meeting with Defendant's Counsel and Defendant Desiderio.  The subject of  he meeting, according to Defendant McKenna, was the parent and how to best thwart her efforts to advocate for her children.

7.30   Defendant McKenna, by virtue of his position as Superintendent for the MUFSD, is aware that it is a violation of Section 504 of the Rehabilitation act and the Americans with Disabilities Act to intimidate, threaten, coerce, or discriminate against an individual who has engaged in a *protected activity*. Protected activities include filing a complaint, testifying, assisting in, or participating in an investigation or hearing under Section 504 or the ADA.

7.31   Defendant McKenna is aware that any child classified under the IDEA is also subject to all the protections available under Sect 504 of the Rehabilitation Act.

7.32   Defendant McKenna, knowing that the purpose of the meeting was to develop a strategy to harass, intimate, and retaliate against the parent for advocating  for her special needs children, a protected activity under Sect 504 and the ADA' did not seek to absolve himself of this unlawful activity but according to Defendant McKenna, participated in the above meeting where it was decided that the parent must be "made to pay"  for her advocacy by unnecessarily delaying and denying her requests for services and

evaluations regarding her special needs children

7.33   Defendant McKenna was not called as a rebuttal witness at this hearing to deny or dispute the validity of parents letter of confirmation to him detailing their meeting nor was he called as a witness to rebut he parents testimony on this issue. Defendant McKenna did not respond to the parents letter on this issue.  In addition, Defendant McKenna did not dispute the account of this meeting published in Southold Town's paper, The Suffolk Times.  It should be noted that the administration has responded to other published comments in the Suffolk Times on special education issues when they disagreed  with or disputed the reporting. The articles in question were offered as parent exhibits but denied admission by the IHO.

7.34   Defendant McKenna aided defendant's counsel and Defendant Desiderio's efforts to deny EM. a free and appropriate public education.

7.35 All of  these defendants acted together (42 USC 1985)to commit numerous acts of  criminal liability(Penal Code 20.00) for the sole purpose of  denying EM his right to a  free and  appropriate public education.  It is the denial of FAPE that the parent challenges and that  provides her right to pursue this matter pro-se.

<u>Fifth Cause of Action Under 42 USC  § 1985:</u>

7.36 The "plan" was much bigger than just denying EM a FAPE as is detailed below. It is a concerted effort to by SRO Paul Kelly to rule against parents in reimbursement cases and unfortunately for EM,  his case was a reimbursement case.

7.37 As reported by the Wall Street Journal, SRO Paul Kelly and  his live in partner ,Kathleen  Surgalla, with the  NYSED Office of Counsel, have been accused of

corruption and collusion in a concerted effort to deny children with disabilities a FAPE.

7.38 As reported by the Wall Street *Journal* *" Ms. Surgalla has trained the part-time officers who conduct the initial hearings and handled other special-education matters. Mr. Kelly and Ms. Surgalla live together in an Albany suburb, voter-registration records show.*

7.39   As reported in the Albany times union:" *The state Commission of Investigation is looking at the Education Department amid charges that top officials may have improperly denied students costly special education services during the past few years.*

7.40 As reported by the Wall Street Journal , SRO Paul Kelly has been accused by former staff lawyers of changing decisions that rightfully favored the parents in tuition reimbursement cases to go in favor of the district.

7.41 In addition to the many errors or law and fact committed by Mr. Kelly in his decision in this case, it is clear from the record of SRO Kelly that as this was reimbursement case, it was destined to be decided against the parent.

7.42 SRO Paul Kelly relies on the cover of legal precedent to get away with his unlawful actions. Complaints against him are met with the legal defense that judges are immune from suits arising from disagreements with their decisions. Relying on such precedent, SRO Kelly knowingly and deliberately rewrites and misinterprets the law and facts to achieve the desired outcome of ruling against a parent with no fear of being held accountable unless the parent files an appeal, a rare and costly event . SRO Kelly, according to his legal defenders at the NYS Attorney's Generals office, is above the law.

7.43 As a result of the concerted unlawful and malicious conspiracy of SRO Paul

Kelly, EM's right to a FAPE which is granted him under IDEA .and 42 U.S.C. sec. 1983 and 1985 was denied.

## VIII.  CAUSES OF ACTION UNDER IDEA

8.00  The IDEA and its implementing regulations 34 CFR Part 300 and the state act implementing its regulations 8 NYCCR 200 entitle all students with disabilities the right to a free and appropriate public education.

8.01  According to IDEA ,20 UCS section 1401(3) and its implementing regulations at 34 CFR sect 300.7(a)(1) and (c)(10) and regulations under the state act,8 NYCCR 200 , the term child with a disability includes students who have autism.

8.02  According to IDEA, 20 USC Sect 1400(d)(1), 1412(a)(1), (3) and (7) and 1414 (a-c) and  regulations promulgated pursuant to it at 34 CFR sect 300.125, 300.300, 300.320 and  regulations under the state act 8 NYCCR 200,  each state and school district receiving federal  funds must evaluate and identify all students residing within their boundaries who are suspected  of being a student with a disability and in need of special education, regardless of the severity of their disability and even though they are passing from grade to grade

8.03  The district has received and is receiving federal and state funds under IDEA and the state act.

8.04  These federal and state funds are received for the purpose of providing a free and appropriate public education to all students with disabilities.

8.05 The district denied EM a FAPE by failing to properly evaluate EM and then unnecessarily delaying and then denying the parent's request for an IEE.  The district denied EM's FAPE by failing develop an IEP using an appropriated administered

evaluation and thus it was not reasonably calculated to enable him to derive a meaningful educational benefit.

8.06  EM's parent has the right under IDEA and state law to an impartial hearing to resolve disputes about any matter related to identification, evaluation, or educational placement or the provision of a free appropriate public education to EM 20 USC sect.1415(b)(6), 34 CFR300.507(a) and state regulation 8 NYCCR 200

8.07  By decision dated 7/31/07 , the administrative law judge denied the parents request for reimbursement for an IEE.

8.08 The administrative decision contains substantial errors of law and fact .

8.9 By decision dated November 7 2008, the Office of State Review denied the Plaintiffs claims

8. 10 The Office of State review decision contains substantial errors of law and fact.

### VIX  Request for relief

Wherefore, the plaintiff request that this court:

1.  Assume jurisdiction over this action

2.  Enter a declaratory judgment that the district denied EM a free and appropriate public education under the IDEA, state law, and 42 USC sec. 1983 and 1985 by:

     a.  failing to appropriately evaluate EM's on 9/17/2007 by not following the published protocols of the test makers.
     b.  unnecessarily delaying responding to the parents request for an IEE
     c.  denying the parent's request for an IEE when its evaluation was not appropriate

3.  Enter an order requiring the district to reimburse for all costs of EM's IEE.

4.  Grant plaintiff her costs and attorneys fees, if any, for pursing this action and in

the administrative hearing and appeal below pursuant to 20 USC Sect.1415(i)
(3)(B) and

7.  Award any further relief the court deems appropriate

Dated This Sixth Day of March, 2009

Colleen Merz
255 Donna Dr
Mattituck, NY 11952
631-734-7775